B27 (Official Form 27) (12/13)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re  Kristopher Ott
        Debtor

Case No. 16-19227
Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: Snap-on Credit LLC

2. Amount of the debt subject to this reaffirmation agreement:
   $8,268.60 on the date of bankruptcy  $8,268.60 to be paid under reaffirmation agreement

3. Annual percentage rate of interest: 27.9% prior to bankruptcy
   27.9% under reaffirmation agreement (☒ Fixed Rate ☐ Adjustable Rate)

4. Repayment terms (if fixed rate): $ 60.70 per week until paid in full.

5. Collateral, if any, securing the debt: Current market value: $8,268.60
   Description: Tool of Trade

6. Does the creditor assert that the debt is nondischargeable? ☐ Yes ☒ No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| **Debtor's Schedule I and J Entries** | | | **Debtor's Income and Expenses as Stated on Reaffirmation Agreement** | |
|---|---|---|---|---|
| 7A. | Total monthly income from Schedule I, line 12 | $4,096.04 | 7B. Monthly income from all sources after payroll deductions | $4,096.04 |
| 8A. | Total monthly expenses from Schedule J, line 22 | $4,135.00 | 8B. Monthly expenses | $4,135.00 |
| 9A. | Total monthly payments on reaffirmed debts not listed on Schedule J | $ 0 | 9B. Total monthly payments on reaffirmed debts not included in monthly expenses | $ 0 |
| | | | 10B. Net monthly income (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) | ($38.96) |

B27 (Official Form 27) (12/13)                                                                                       Page 2

11. Explain with specificity any difference between the income amounts (7A and 7B):
    _____
    _____

12. Explain with specificity any difference between the expense amounts (8A and 8B):
    _____
    _____

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct

_____          _____
Signature of Debtor (only required if        Signature of Joint Debtor (if applicable, and
line 11 or 12 is completed)                  only required if line 11 or 12 is completed)

Other Information

[✓] Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt: _debtor will cut back on expenses._

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
   ✓ Yes          ___ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
   ✓ Yes          ✗ No

**FILER'S CERTIFICATION**

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

_Crystal Passias_
Signature
Crystal Passias
~~Jeanine Lee~~, Paralegal, Snap-on Credit LLC
Print/Type Name & Signer's Relation to Case

B240A (Form B240A) (04/10)

> Check one.
> ☒ **Presumption of Undue Hardship**
> ☐ **No Presumption of Undue Hardship**
> *See Debtor's Statement in Support of Reaffirmation Part II below, to determine which box to check.*

## UNITED STATES BANKRUPTCY COURT
### District of New Jersey

In re  Kristopher Ott                           Case No.  16-19227
       Debtor                                    Chapter   7

### REAFFIRMATION DOCUMENTS

**Name of Creditor:**  Snap-on Credit LLC

☐ Check this box if Creditor is a Credit Union

### PART I: REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Par V of this form.**

A. Brief description of the original agreement being reaffirmed: <u>Tools of Trade</u>
   *For example, auto loan*

B. **AMOUNT REAFFIRMED:** <u>$8,268.60</u>

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V. Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is <u>27.9%</u>

   *See definition of "Annual Percentage Rate" in Part V. Section C below.*

   This is a *(check one)*  ☒ Fixed Rate        ☐ Variable Rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

B240A, Reaffirmation Documents (04/10)                                                                                   Page 2

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☒ $ 60.70 per week until paid in full starting on the month the reaffirmation agreement is signed.

☐ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount. _____
No changes to terms of original purchase money security interest

E. Describe the collateral, if any, securing the debt:

Description: Tools of Trade
Current Market Value: $8,268.60

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☒ Yes. What was the purchase price for the collateral?    $ see attached credit sales statement

☐ No. What was the amount of the original loan?    $ _____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $8,268.60 | $8,268.60 |
| Annual Percentage Rate | 27.9% | 27.9% |
| Weekly Payment | $ 60.70 | $ 60.70 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit: _____

**PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

A. Were you represented by an attorney during the course of negotiating this agreement?
Check one.    ☒ Yes    ☐ No

B. Is the creditor a credit union?
Check one.    ☐ Yes    ☒ No

B240A, Reaffirmation Documents (04/10)        Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. And 2. below.

   1. Your present monthly income and expenses are:

      a. Monthly income from all sources after payroll deductions (take-home pay plus any other income)    $ 4,096.04

      b. Monthly expenses (including all reaffirmed debts except this one)    $ 4135.00

      c. Amount available to pay this reaffirmed debt (subtract b. from a.)    ($ 38.96)

      d. Amount of monthly payment required for this reaffirmed debt    $ 60.70

*If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

   2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

      ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

      ☑ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because: debtor will cut back on expenses

   Use an additional page if needed for a full explanation.

D. If your answer to BOTH question A. or B. above were "Yes," check the following statement, if applicable.

      ☐ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

B240A, Reaffirmation Documents (04/10)                                                                 Page 4

## PART III.  CERTIFICATION BY DEBTOR(S) AND SIGNATURE OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date  7-1-16          Signature _____
                                  *Debtor*

Date _____       Signature _____
                                  *Joint Debtor, if any*

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor                                               950 Technology Way, Ste. 301
          Snap-on Credit LLC                           Libertyville, IL 60048
          *Print Name*                                        *Address*

          Crystal Resios, Paralegal        Crystal Resios        8/01/16
          *Print Name of Representative*        *Signature*          *Date*

## PART IV.  CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

[X] A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date  6/27/16     Signature of Debtor's Attorney _____

                  Print Name of Debtor's Attorney  Warren Brumel

**PART V.        DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)**

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

**A.    DISCLOSURE STATEMENT**

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

B240A, Reaffirmation Documents (04/10) Page 6

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you were represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   > i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   > ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form B240B to do this.*

B240A, Reaffirmation Documents (04/10)                                                                                          Page 7

### C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

**Snap-on Credit**

RETAIL INSTALLMENT CONTRACT
CREDIT SALE CONTRACT OR ADD-ON RIDER

This Credit Sale Contract or Add-On Rider ("Credit Sale Contract" or "Agreement") provides the terms that the buyer named below (referred to as "you" "your," or "Buyer") agrees to purchase the tools, equipment and other merchandise listed under "Property Description" or on attached invoice or appendix from an authorized Snap-on Tools Company LLC Franchisee, Authorized Dealer or Snap-on sales representative ("Dealer"). **BUYER REPRESENTS AND WARRANTS THAT THE PROPERTY PURCHASED UNDER THIS AGREEMENT IS TO BE USED PRIMARILY FOR COMMERCIAL OR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

SEE APPENDIX A, INVOICE NO. 01181634990 DATED 03/09/2016
FOR "PROPERTY DESCRIPTION"

Dealer Number: 32314
Contract Date: 03/09/2016
Debtor Number

### ITEMIZATION OF TOTAL CREDIT SALE PRICE
(Time Price Disclosure)

1. **Total cash sale price** (including tax, if any): $10463.34
2. Amount of down payment and/or trade-in
   a. Down Payment $0.00
   b. Trade-in (Description of trade-in items $2850.00
      are on the attached invoice or Appendix A)
   c. Total Down Payment (2a + 2b): $2850.00
3. Unpaid balance of total cash sale price: $7613.34
   (Total cash sale price – total down payment)
4. Security Interest Charge
   a. Public officials and/or process costs: $56.00
   b. Florida Document Stamp Tax: $0.00
      (Florida Residents Only)
   c. Processing Fee: $0.00
   d. Total Security Interest Charge (4a+4b+4c) $56.00
5. Subtotal Principal Balance (new sale amount financed): $7669.34
   (Unpaid balance of total cash sale price + Total
   Security Interest Charge)
6. Unpaid Balance: $829.99
   (Current net total amount due under prior Credit Sale Contracts,
   Add-on Rider(s), and/or prior Extended Credit Purchase
   Money Security Agreements)
   Beginning Date on 1st Credit Sale Contract 09/05/2013
7. Other Charges (specify): $0.00
8. New Amount Financed: $8499.33
   (Subtotal Principal Balance + Unpaid Balance +
   Other charges) (Note: finance charges will not be charged
   on accrued but unpaid finance charges. See Section 2 below.)
9. Amount of Finance Charge (estimated, time price differential): $7282.67
10. TOTAL OF PAYMENTS (estimated) $15782.00
    (New Amount Financed + Amount of Finance Charge)
11. TOTAL CREDIT SALE PRICE (estimated) $18632.00
    (Total of Payments + Total Down Payment)

### YOUR PAYMENT SCHEDULE WILL BE:

**Number of Payments** 260

**Payments Due Each** WEEK

**Payment Amount** $60.70

**1st Payment Due Date** 03/16/2016

**ANNUAL PERCENTAGE RATE** 27.90%
The cost of your credit as a yearly rate

**Amount Financed** $8499.33
(sum of 5, 6, and 7) The amount of credit
provided to you or on your behalf:

**FINANCE CHARGE** $7282.67
The estimated dollar amount
the credit will cost you

**Total of Payments** $15782.00
(sum of 8 and 9) The estimated amount
you will have paid after you make
all the payments on time

**Total Credit Sale Price** $18632.00
(sum of 2c and 10)
The total estimated cost of
your purchase on credit

**Insurance:** Credit life insurance and credit disability insurance are **not** required to obtain credit. You may obtain property insurance from anyone you want who is acceptable to Dealer's assignee, Snap-on Credit LLC. Insurance, if any is included in this contract, does not provide coverage for personal liability or property damage caused to others.

**Security:** You are giving a security interest in (a) the goods or property purchased under this Agreement; and (b) if permitted by law all other goods or property bearing any Snap-on® trademark, or distributed by or through Snap-on Incorporated or an affiliate.

**Late charge:** If a payment is late, you will be charged $10.00 but no more than the maximum amount permitted under applicable law.

**NSF charge:** If you make a payment by check or debit and that payment is denied by your bank for insufficient funds or any other reason, then you will owe not only the payment but also an NSF charge of $25, but not more than the maximum amount permitted under applicable law.

**Prepayment:** If you pay off early, you will not pay a penalty and you may be entitled to a refund of part of the finance charge. Your finance charges are calculated based on your average daily outstanding balance due.

**Add-On Rider:** If you have an unpaid balance on any Prior Agreement, Credit Sale Contract or Add-On Rider(s), then this Agreement is also an Add-On Rider to the prior Agreement(s). See below for additional information about any Add-On Rider.

**SEE BELOW AND ON ADDITIONAL PAGES** for additional terms and information about nonpayment, default, repayment in full before the scheduled date, and prepayment refunds and penalties.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE FRANCHISEE, DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENTATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

## ADDITIONAL TERMS

**1. Offer of Cash Sale or Payment Over Time.** Dealer has offered you a choice of buying the Property for a stated cash price payable immediately or buying the Property for a Total Credit Sale Price which permits you to purchase the Property now, but pay in installments over an extended period of time. The Total Credit Sale Price will be more or less, depending on when you pay and the amount you pay each time, and the Total Credit Sale Price is more than the cash sale price because it includes a finance charge to compensate the Dealer for waiting before collecting the full purchase price.

**2. Payment Terms.** *You agree to pay to Dealer or Dealer's assignee the Amount Financed plus finance charges applied to the outstanding balance thereof at the annual percentage rate set forth on page one during the time any balance under this Agreement remains unpaid. You agree to make equal weekly payments (or such other periodic payment schedule if specifically agreed in writing) (in cash, check or money order) as set forth under "Your payment schedule will be" on the first page of this Agreement until all amounts due under this Agreement are paid (provided that the final payment shall be in the amount of the unpaid balance of the Amount Financed plus accrued but unpaid finance charges).* You may prepay the balance of the Amount Financed without penalty at any time; and doing so will reduce the amount of finance charge you would otherwise be required to pay. Unless you prepay the entire outstanding balance of the Amount Financed, however, the amount you are required to pay each week will remain the same, with any adjustments being reflected in the last payment and in the number of payments. If you make an overpayment when you prepay the entire outstanding balance of the Amount Financed, we will not be required to refund amounts less than $1.00. If you pay the amount due under this Agreement late, the finance charge will continue to accrue monthly on the unpaid average daily balance. In that event, your last payment may be increased to pay the full balance due. Dealer may offer a deferred first payment due date; however, the estimated Finance Charge and the number and amount of payments on the first page of this Agreement are based on payments beginning immediately after the date of this Agreement. If you elect to defer your payments, you will not be charged late fees, but finance charges will continue to accrue on the unpaid balance, and you will owe additional finance charges that may not be reflected in the estimate on the first page. "Same As Cash" benefit: this phrase means that although finance charges apply and begin accrual at contract inception, provided you pay the entire Unpaid Balance above within ninety (90) days in good funds from the contract date and are not otherwise in default, the finance charge will be waived and any amounts you paid representing finance charges will be refunded and applied against your account or returned to you; some promotions may feature alternate Same as Cash periods. You and your Dealer may agree to transfer to the Amount Financed any balance you may owe Dealer as a result of prior purchases pursuant to your truck account or revolving account ("RA") credit that Dealer has extended to you. You represent, warrant and agree that: (a) you voluntarily entered into this contract with Dealer for the full amount of the Amount Financed plus estimated time finance charges accruing on it instead of paying in full on the sale date; (b) all information supplied and statements made by you in any application for credit before or at the same time as the execution of this Agreement are and will be correct, complete and genuine, (c) you only owe the dealer for any prior purchases being transferred from RA and have no other liens and encumbrances on the RA tools and equipment being pledged as security under this Agreement, and (d) any items used as a trade-in are free of all liens or other encumbrances, are fully paid for, and you possess good and marketable title to it. The Unpaid Balance under any prior Agreement, including accrued but unpaid finance charges, is used to calculate your payment amount; however, you will pay finance charges only on the outstanding principal balance (cash price) of the Amount Financed at the contract rate until paid in full.

**3. Allocation of Payments.** Your payments will be allocated first to any additional charges, costs and expenses, and then to any finance charge in the order it is incurred, and then to the payment of the cash price of each purchase in the order in which the purchase was made under prior agreements (Credit Sale Contract or Add-On Riders) first and then this Agreement, with the payments being applied to the oldest purchase first; lowest-priced same day purchases paid off first. Down payments and trade-ins will be applied to the cash price of all items purchased on the same day, credited based upon the lowest-priced purchases first.

**4. If this is an ADD-ON RIDER: You agree to purchase the additional Property listed in the "Property Description" referred to above, Appendix A, any attachment(s) and any Invoice(s) and to pay for such Property as well as the Property purchased under the prior Agreement(s) according to the payment terms listed in this Agreement which modifies the prior agreement terms. If the prior Agreement(s) to which this Add-On Rider relates has/have been assigned to Snap-on Credit LLC ("Snap-on Credit"), then this Add-On Rider is also assigned to Snap-on Credit subject to its acceptance) and all references to Dealer are to Snap-on Credit as Dealer's Assignee with respect to subsequent payments for items acquired under any contract. To the extent that You have committed or engaged in the commission of an Event of Default, then in consideration of Seller's allowing you to enter into this ADD-ON RIDER, and in consideration of other good and valuable consideration, the sufficiency and receipt of which You hereby acknowledge, to the extent allowed by law You waive, forfeit, and agree to forever forego any and all claims and causes of action --past, present or future -- against Seller and its successors and assigns, including but not limited to Snap-on Credit LLC." You also acknowledge that You actively and with full understanding participated in negotiating the material terms, including but not limited to this Paragraph 4, this ADD-ON RIDER after full consultation with, and review by, Your counsel.**

**5. Grant of Security Interest.** As security for your obligations under this Agreement, or any other agreement with Dealer or Dealer's assignee, you hereby grant Dealer a purchase money security interest in each item of Property you purchase under this Agreement until that item is paid for. As further security for your obligations under this Agreement, in all states except where prohibited by applicable law for agreements of this type, you hereby grant Dealer a security interest in each other item of tools, goods and equipment previously purchased or hereafter acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or bearing Snap-on Incorporated trademarks or logos, together with all proceeds (including insurance proceeds), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the Property are collectively referred to as "Collateral"). If this Agreement is assigned to Snap-on Credit pursuant to Section 6 below, and if the Amount Financed includes a transfer of RA balance owed to Dealer, then Dealer hereby assigns to Snap-on Credit any purchase money security interest that Dealer may have in any merchandise reflected in the RA balance so transferred. In such case, Snap-on Credit shall continue to hold a purchase money security interest in such merchandise after such transfer. You agree not to remove any Collateral from the state where the original sale was made without the written consent of Dealer or Snap-on Credit, if this Agreement is assigned to Snap-on Credit. You agree not to sell, dispose of or encumber any Collateral until your entire balance due is paid in full. To the extent permitted by and subject to applicable law, you agree and hereby grant to Dealer and Snap-on Credit or its agent or assigns the power of attorney and right to sign on your behalf and file or record such financing statements or other documents as may be necessary to perfect or maintain this security interest granted by you under this Agreement.

**6. Assignment by Dealer.** (a) Dealer may assign this Agreement for value to Snap-on Credit LLC, 950 Technology Way, Suite 301, Libertyville, IL 60048. If Dealer assigns this Agreement to Snap-on Credit, then after such assignment (1) Snap-on Credit or its assigns shall have all the rights and remedies of Dealer under this Agreement and all of your obligations, agreements, representations and warranties shall be deemed to have been made to Snap-on Credit with the same effect as if Snap-on Credit were an original party to this Agreement; and (2) Dealer will not have any power or authority to exercise any such rights or remedies, give any consents under Section 5 or change or modify this Agreement or any related document in any way. (b) If this Agreement is assigned to Snap-on Credit, you agree to deliver your payments to Dealer or directly to Snap-on Credit. *The Dealer is not Snap-on Credit's agent for any purpose.* If you make payments to your Dealer, the Dealer will be acting as your agent. In that capacity, the Dealer has agreed with Snap-on Credit to remit payments under this Agreement to Snap-on Credit on a regular basis. You will be credited with payment on the date Snap-on Credit receives payment from the Dealer. Payments received by Snap-on Credit after 10:00 a.m. CST will be credited on the next business day. Snap-on Credit will credit you and waive additional finance charges and late charges on any installment regardless of when payment is received from the dealer *if you have proof of your timely payment to the Dealer* (such as a valid receipt or canceled check). Alternatively, you may make any payments (by debit, check or money order payable to Snap-on Credit, and not cash) directly to Snap-on Credit at the address provided to you by Snap-on Credit, in which case you will be credited with payment on the date Snap-on Credit receives the payment. Snap-on Credit may require you to make payments directly to it. Snap-on Credit's business days are Monday through Friday, excluding holidays.

**7. Property Insurance.** So long as Dealer or its assigns has a security interest in any Collateral, you will obtain and keep in force fire and other casualty insurance on the Collateral in an amount and form and written by insurers satisfactory to Dealer, with loss payable to Dealer or Dealer's assignee. If you fail to do so, Dealer or its assigns may, at their option, purchase such insurance, in which event you must pay the cost thereof to Dealer or its assigns on demand. However, any failure by Dealer to obtain and keep in force such insurance, after your failure to do so, shall not release you from any obligations or liability under this Agreement or any prior agreements. *Any insurance procured by Dealer under this section will not include insurance for property damage to others.*

**8. Additional Charges.** To the extent permitted by and subject to applicable law, you agree to pay the additional charges listed below. Failure to impose a fee or charge in certain instances does not constitute a waiver or prohibit the Dealer or any assignee from insisting on strict compliance with this Agreement by you at any time. **(a) Security Interest Charges.** You will be assessed a Security Interest Charge to cover (1) fees and charges paid to public officials for determining the existence of or for perfecting, releasing or satisfying the security interest you granted under this Agreement, (2) the costs payable for any outside service retained to provide searches and filings for perfecting and verifying the security interest and (3) in certain states (depending on state rate limits and rate calculations) we may also charge an amount to recoup a portion of our production and management costs related to maintaining security

interest transactions, not to exceed the greater of $15.00 or the maximum amount allowed by law. **(b) Late Charges.** If you fail to make payments under this Agreement within 10 days after the date due, you may be assessed a Late Charge of the lesser of: $10.00 or the maximum permitted by applicable law. **(c) NSF Check Charges.** If your check is not honored by your bank because of non-sufficient funds, a closed account, or any other reason, you may be assessed an NSF Check Charge of the lesser of $25.00 or the maximum permitted by law. **(d) Legal Fees.** In addition to the full amount owed and any court costs, if any matter arising out of your default under this Agreement is referred to an attorney to collect the amount you owe or to repossess any Collateral, you agree to pay all costs and expenses (including all reasonable attorneys' fees and court costs) incurred by us in enforcing any of the terms of this Agreement or any of our rights against you. **(e) Extension fees.** In the event we provide you a contract term modification or payment extension at your request or as part of another type of payment arrangement, we reserve the right to charge a onetime extension fee of the lesser of $30.00 or the maximum amount allowed by law to offset a portion of our costs associated with such change. **(f) Electronic Payments.** If you choose to pay your payments via a phone payment or internet payment service we offer or designate, you agree to pay a fee for each such payment of the lesser of $10 or less, the maximum amount allowed by law. **(g) Other Considerations.** We reserve the right to charge additional fees as appropriate in the event the parties agree to other contract modifications.

9. **Events of Default.** The occurrence of any one of the following events constitutes a default under this Agreement: (a) You do not pay at least the minimum payment due or you otherwise become delinquent on any other obligation to Dealer or to Snap-on Credit or its assigns, or if this Agreement is assigned, to such assignee; (b) you file or consent to the filing of bankruptcy or similar proceedings against you or you become insolvent, or your financial condition deteriorates significantly and it appears likely that you will not be able to repay Dealer for any reason; (c) you die, become imprisoned or are declared legally incompetent; (d) you at any time give Dealer information that is inaccurate, misleading or incomplete; or (e) you fail to comply with any terms or conditions of this Agreement.

10. **Acceleration; Remedies.** Dealer, or if assigned, Dealer's assignee will have all the rights and remedies of a secured creditor under the Uniform Commercial Code and any other applicable laws. In addition, if any one of the events of default occurs, subject to any right you may have under applicable law to receive notice of and to cure such default, at Dealer's option Dealer may (a) declare the entire unpaid balance due under this Agreement immediately due and payable; and (b) repossess any Collateral in which Dealer still retains a security interest, and without limiting the foregoing, in the event this or any other transaction is assigned, any Collateral in which assignee still retains a security interest but only in the manner and to the extent permitted by applicable law. If Dealer resells any repossessed Collateral, Dealer agrees to pay you any surplus remaining (after deduction of the costs of repossession and sale and other costs, including reasonable attorneys' fees, to the extent permitted by law) and you agree to pay Dealer any deficiency in accordance with the Uniform Commercial Code and any other applicable laws. Dealer may accept late or partial payments or any payments marked as being payment in full or as being settlement for any dispute without prejudicing any of Dealer's rights under or in any way amending this Agreement. Dealer's failure or delay at any time to exercise any of Dealer's contract, legal or equitable rights shall not be deemed a waiver of these rights nor of the right to exercise Dealer's rights at any other time. If Snap-on Credit becomes the secured party under this Agreement, you agree that it is commercially reasonable for repossessed Collateral to be sold at public or private sales (in any state or county selected by Snap-on Credit) to dealers or others in lots or pieces (with or without the Collateral being physically present) at used tool prices. In the event you do not pay all amounts due under this contract and you are unreachable, or in the event of settlement or other events, IRS regulations may require Dealer or an assignee to file a 1099-C form for informational purposes showing the remaining unpaid amounts due under your original contract regardless of any dispute. The mere filing of such 1099-C does not itself constitute a forgiveness or adjustment of any amounts due. The term "Buyer" and "Dealer" as used in this Agreement also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors and permitted assigns of those parties.

11. **Continuing Authority to Review.** You hereby authorize Dealer, or if assigned, Dealer's assignee, to obtain and review credit information about you from any credit reporting agency or any other source during the time this Agreement remains in effect or for six (6) months thereafter for purposes of increasing or modifying the amount of credit available to you, regardless of whether you submit a written application for same.

12. **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, THE ASSIGNEE'S STATE WITHOUT REGARD TO ITS CONFLICTS OF LAWS RULES OR PROVISIONS; PROVIDED, HOWEVER, IN THE EVENT THIS AGREEMENT OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED PERSUANT TO ILLINOIS LAW, THEN THE LAWS OF THE STATE YOUR RESIDENCE SHALL GOVERN. If used in U.S. Territories or Commonwealths, this Agreement is not to be governed by the United Nations Convention on Contracts for the International Sale of Goods.

13. **Jury Trial Waiver and Class Waiver.** YOU AND DEALER WAIVE ALL RIGHTS TO A TRIAL BY JURY. YOU AGREE THAT YOU, THE BUYER, MAY ONLY BRING CLAIMS AGAINST DEALER OR ANY ASSIGNEE IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

14. **Transfer of Agreement.** Dealer reserves the right to sell or transfer this Agreement in whole or in part to another entity or person without prior notice to you. You, however, cannot transfer this Agreement or rights and obligations under this Agreement to any other entity or person.

15. **Finance Charge Savings Clause.** – Notwithstanding any other provision in this Agreement, the aggregate finance charge rate utilized with respect to any of the obligations, including all charges or fees in connection therewith deemed includable in the finance charge shall not exceed the maximum lawful rate. If the finance charge under this Agreement at any time exceeds the maximum allowed by law, the outstanding amount of the Amount Financed shall bear finance charges at the maximum lawful rate until the total finance charges due and total amount financed are paid in full at such rate. The parties intend to conform to any applicable laws limiting finance charges on this type of Agreement. Accordingly, if Dealer contracts for, charges, or receives any consideration which constitutes interest in excess of maximum allowed by law, then any such excess shall be cancelled automatically and, if previously paid, shall at such Lender's option be applied to the outstanding amount remaining due hereunder or be refunded to Buyer

16. **Severability; Entire Agreement.** If any term, provision or section of this Agreement is held void, voidable, invalid or unenforceable under any statute or court decision, or any governmental rule or regulation, the remainder of the Agreement shall remain effective, and any such ineffectiveness shall not affect the validity or enforceability of this Agreement in any other jurisdiction. This Agreement, any previous Credit Sale Contract, Add-On Riders and, any written addenda or riders hereto signed by both parties constitutes the entire agreement between the parties regarding the subject matter of this Agreement.

=================================================================================================================

**Notice to Maryland Residents.** Agreement is pursuant to Subtitle 10 (Credit Grantor Closed End Contract Provisions) of Md. Code Ann., Fin. Inst. §12-100 et seq.

**Notice to California Residents.** California Finance Lenders License No. 603-6880. For California residents, NSF Fees are limited to a maximum of $15.00 and Late Charges are limited to a maximum of $10.00

**Notice to District of Columbia Residents.** Seller certifies that the information contained in the contract complies with the District of Columbia Municipal Regulations, Title 16, Chapter 3.

**Notice to Connecticut Residents.** Attorneys' fees, which are permitted under Sections 8 and 10 of this Agreement, may not exceed 15% of the amount due plus court costs, and may only be collected or sought from Connecticut Residents when the contract is referred to an attorney, not a salaried employee of the holder of the contract, for collection. Late charges may not exceed the lesser of 5% of the past due installment (whether weekly or monthly) or $10.00.

**Notice to South Dakota Residents.** Any concerns regarding improprieties may be reported to the South Dakota Div. of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or call 605-773-3421.

THIS DOCUMENT CONSISTS OF THE FINANCIAL TERMS ON PAGE 1, THE ADDITIONAL TERMS IN SECTIONS 1 THROUGH 16, THIS PAGE, AND ANY ATTACHED APPENDIX A

IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS SET FORTH IN THIS AGREEMENT ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.

**BUYER ACKNOWLEDGES RECEIPT OF PRODUCT AND A COPY OF THIS AGREEMENT**

### NOTICE TO BUYER

DO NOT SIGN THIS CONTRACT (CREDIT SALE CONTRACT OR ADD-ON RIDER) BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.

YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT.

UNDER THE LAW, YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS:
    (a) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED FINANCE CHARGE;
    (b) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT;
    (c) TO REQUIRE, UNDER CERTAIN CONDITIONS, RESALE OF THE PROPERTY IF REPOSSESSED.

| DEALER (SECURED PARTY) | BUYER (DEBTOR) |
|---|---|
| CIC Live Signature<br>JOE VAN MATER<br>10:47:45 AM 03-09-2016 (-05:00 GMT)<br>I, JOE VAN MATER, am signing to certify the authenticity of this document | CIC Live Signature<br>KRIS OTT<br>10:47:55 AM 03-09-2016 (-05:00 GMT)<br>I, KRIS OTT, am signing this document to confirm it has been reviewed |
| JOE VAN MATER | KRIS OTT |
| 289 East Highland Ave | 128 BROOKSIDE DRIVE |
| Atlantic Highlands, NJ 07716 | BELFORD, NJ 07718 |

Dealer assigns for value all right, title and interest in this Agreement to **Snap-on Credit LLC**, subject to acceptance by Snap-on Credit LLC. By providing the information on the unpaid balance due under any prior Agreement, Credit Sale Contract or any Add-On Rider(s) above for this transaction, Snap-on Credit LLC consents to the rescheduling of payments under the Credit Sale Contract and any Add-On Rider(s) previously assigned to Snap-on Credit LLC.
Snap-on Credit LLC - 950 Technology Way, Suite 301 - Libertyville, IL 60048 - (877)777-8455

## APPENDIX A
### "Property Description"

INVOICE DATE 03/09/2016          INVOICE NUMBER  01181634990          DEBTOR NUMBER

Dealer                           Buyer (Debtor)
JOE VAN MATER                    KRIS OTT

| | | | | | |
|---|---|---|---|---|---|
| New Sale Subtotal | $ 7049.85 | Total R/A Transfer | $ 0.00 | Shipping/Handling $ | 0.00 |
| Tax Applied | $ 563.49 | Total | $ 7,613.34 | S/H Tax | $ |
| Subtotal Including Tax | $ 7613.34 | | | | |

| Line | QTY | PRODUCT NO. SERIAL NO. | DESCRIPTION | EACH | COMMENTS | LC | LINE TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | 1 | KTL1022PJJ<br>W086565A | 2BK RC EXT GR BR TRIM | 8620.00 | 0.00 | 0 | 8620.00 |
| 2 | 1 | KRSST1001B | STAINLESS TOP | 825.00 | 825.00 | 10 | 0.00 |
| 3 | -1 | PREFCUSTDISC | PREFERRED CUSTOMER DISCOUNT | 1500.00 | 0.00 | 8 | -1500.00 |
| 4 | -1 | ECREBATE1000 | EC INSTANT REBATE 1000 | 1000.00 | 0.00 | 8 | -1000.00 |
| 5 | 1 | CT8850G<br>15490878 | 18v 1/2IN Li-ION IMPACT GREEN | 739.95 | 0.00 | | 739.95 |
| 6 | 1 | CT8810AGDB<br>15390444 | 18v 3/8" LioN IMPACT DB GREEN | 309.95 | 0.00 | 0 | 309.95 |
| 7 | -1 | USEDCORDLESS | NICAD PACKAGE | 250.00 | 0.00 | 8 | -250.00 |
| 8 | -1 | USEDCORDLESS | NICAD PACKAGE | 100.00 | 0.00 | 8 | -100.00 |
| 9 | 1 | CTR761BGDB<br>1 | 3/8" 14.4v RATCHET DB GREEN | 229.95 | 0.00 | | 229.95 |

**Snap-on Credit**

RETAIL INSTALLMENT CONTRACT
CREDIT SALE CONTRACT OR ADD-ON RIDER

This Credit Sale Contract or Add-On Rider ("Credit Sale Contract" or "Agreement") provides the terms that the buyer named below (referred to as "you" "your," or "Buyer") agrees to purchase the tools, equipment and other merchandise listed under "Property Description" or on attached invoice or appendix from an authorized Snap-on Tools Company LLC Franchisee, Authorized Dealer or Snap-on sales representative ("Dealer"). BUYER REPRESENTS AND WARRANTS THAT THE PROPERTY PURCHASED UNDER THIS AGREEMENT IS TO BE USED PRIMARILY FOR COMMERCIAL OR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

SEE APPENDIX A, INVOICE NO. 374864    DATED 09/05/2013
FOR "PROPERTY DESCRIPTION"

Dealer Number:    40460
Contract Date:    09/05/2013
Debtor Number:

### ITEMIZATION OF TOTAL CREDIT SALE PRICE
(Time Price Disclosure)

1. Total cash sale price (including tax, if any): $ 3932.65
2. Amount of down payment and/or trade-in
   a. Down Payment    $ 0.00
   b. Trade-in (Description of trade-in items    $ 300.00
      are on the attached invoice or Appendix A)
   c. Total Down Payment (2a + 2b):    $ 300.00
3. Unpaid balance of total cash sale price:    $ 3632.65
   (Total cash sale price – total down payment)
4. Security Interest Charge
   a. Public officials and/or process costs:    $ 56.00
   b. Florida Document Stamp Tax:    $ 0.00
      (Florida Residents Only)
   c. Processing Fee:    $ 0.00
   d. Total Security Interest Charge (4a+4b+4c)    $ 56.00
5. Subtotal Principal Balance (new sale amount financed):    $ 3688.65
   (Unpaid balance of total cash sale price + Total Security Interest Charge)
6. Unpaid Balance:    $ 0.00
   (Payoff of prior Credit Sale Contracts, Add-on Rider(s), and prior Extended Credit Purchase Money Security Agreements)
   Beginning Date on 1st Credit Sale Contract
7. Other Charges (specify):    $ 0.00
8. New Amount Financed:    $ 3688.65
   (Subtotal Principal Balance + Unpaid Balance + Other charges) (Note: finance charges will not be charged on accrued but unpaid finance charges. See Section 2 below.)
9. Amount of Finance Charge (estimated):    $ 1765.11
10. TOTAL OF PAYMENTS (estimated)    $ 5453.76
    (New Amount Financed + Amount of Finance Charge)
11. TOTAL CREDIT SALE PRICE (estimated)    $ 5753.76
    (Total of Payments + Total Down Payment)

### YOUR PAYMENT SCHEDULE WILL BE:

Number of Payments 156

Payments Due Each    WEEK

Payment Amount    $ 34.96

1st Payment Due Date 09/12/2013

ANNUAL PERCENTAGE RATE    27.900%
The cost of your credit as a yearly rate

Amount Financed    $ 3688.65
(sum of 5, 6, and 7) The amount of credit
provided to you or on your behalf:

FINANCE CHARGE    $ 1765.11
The estimated dollar amount
the credit will cost you

Total of Payments    $ 5453.76
(sum of 8 and 9) The estimated amount
you will have paid after you make
all the payments on time

Total Credit Sale Price    $ 5753.76
(sum of 2c and 10)
The total estimated cost of
your purchase on credit

**Insurance:** Credit life insurance and credit disability insurance are not required to obtain credit. You may obtain property insurance from anyone you want who is acceptable to Dealer's assignee, Snap-on Credit LLC. Insurance, if any is included in this contract, does not provide coverage for personal liability or property damage caused to others.

**Security:** You are giving a security interest in (a) the goods or property being purchased under this Agreement and any prior Agreement; and (b) if permitted by law all other goods or property bearing any Snap-on® trademark, or distributed by or through Snap-on Incorporated or an affiliate.

**Late charge:** If a payment is late, you will be charged $10.00 or if less, the maximum amount permitted under applicable law.

**NSF charge:** If you make a payment by check or debit and that payment is denied by your bank for insufficient funds or any other reason, then you will owe not only the payment but also an NSF charge of $25, but not more than the maximum amount permitted under applicable law.

**Prepayment:** If you pay off early, you will not pay a penalty and you may be entitled to a refund of part of the finance charge. Your finance charges are calculated based on your average daily outstanding balance due.

**Add-On Rider:** If you have an unpaid balance on any Prior Agreement, Credit Sale Contract or Add-On Rider(s), then this Agreement is also an Add-On Rider to the prior Agreement(s). See below for additional information about any Add-On Rider.

**SEE BELOW AND ON ADDITIONAL PAGES** for additional terms and information about nonpayment, default, and repayment in full before the scheduled date, and prepayment refunds and penalties.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE FRANCHISEE, DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

## ADDITIONAL TERMS

1. **Offer of Cash Sale or Payment Over Time.** Dealer has offered you a choice of buying the Property for a stated cash price payable immediately or buying the Property for a Total Credit Sale Price which permits you to purchase the Property now, but pay in installments over an extended period of time. The Total Credit Sale Price will be more or less, depending on when you pay and the amount you pay each time, and the Total Credit Sale Price is more than the cash sale price because it includes a finance charge to compensate the Dealer for waiting before collecting the full purchase price.

2. **Payment Terms.** *You agree to pay to Dealer or Dealer's assignee the Amount Financed plus finance charges applied to the outstanding balance thereof at the annual percentage rate set forth on page one during the time any balance under this Agreement remains unpaid. You agree to make equal weekly payments (or such other periodic payment schedule if specifically agreed in writing) (in cash, check or money order) as set forth under "Your payment schedule will be" on the first page of this Agreement until all amounts due under this Agreement are paid (provided that the final payment shall be in the amount of the unpaid balance of the Amount Financed plus accrued but unpaid finance charges).* You may prepay the balance of the Amount Financed without penalty at any time; and doing so will reduce the amount of finance charge you would otherwise be required to pay. Unless you prepay the entire outstanding balance of the Amount Financed, however, the amount you are required to pay each week will remain the same, with any adjustments being reflected in the last payment and in the number of payments. If you make an overpayment when you prepay the entire outstanding balance of the Amount Financed, we will not be required to refund amounts less than $1.00. If you pay the amount due under this Agreement late, the finance charge will continue to accrue monthly on the unpaid average daily balance. In that event, your last payment may be increased to pay the full balance due. Dealer may offer a deferred first payment due date; however, the estimated Finance Charge and the number and amount of payments on the first page of this Agreement are based on payments beginning immediately after the date of this Agreement. If you elect to defer your payments, you will not be charged late fees, but finance charges will continue to accrue on the unpaid balance, and you will owe additional finance charges that may not be reflected in the estimate on the first page. You and your Dealer may agree to transfer to the Amount Financed any balance you may owe Dealer as a result of prior purchases pursuant to your truck account or revolving account ("RA") credit that Dealer has extended to you. You represent, warrant and agree that: (a) you are justly indebted to Dealer for the full amount of the Amount Financed plus finance charges accruing on it; (b) all information supplied and statements made by you in any application for credit before or at the same time as the execution of this Agreement are and will be correct, complete and genuine. (c) you only owe the dealer for any prior purchases being transferred from RA and have no other liens and encumbrances on the RA tools and equipment being pledged as security under this Agreement, and (d) any items used as a trade-in are free of all liens or other encumbrances, are fully paid for, and you possess good and marketable title to it. The Unpaid Balance under any prior Agreement, including accrued but unpaid finance charges, is used to calculate your payment amount; however, you will pay finance charges only on the outstanding principal balance (cash price) of the Amount Financed.

3. **Allocation of Payments.** Your payments will be allocated first to any additional charges, costs and expenses, and then to any finance charge in the order it is incurred, and then to the payment of the cash price of each purchase in the order in which the purchase was made under prior agreements (Credit Sale Contract or Add-On Riders) first and then this Agreement, with the payments being applied to the oldest purchase first; lowest-priced same day purchases paid off first. Down payments and trade-ins will be applied to the cash price of all items purchased on the same day, credited based upon the lowest-priced purchases first.

4. If this is an ADD-ON RIDER: **You agree to purchase the additional Property listed in the "Property Description" referred to above, Appendix A, any attachment(s) and any invoice(s) and to pay for such Property as well as the Property purchased under the prior Agreement(s) according to the payment terms listed in <u>this</u> Agreement. If the prior Agreement(s) to which this Add-On Rider relates has/have been assigned to Snap-on Credit LLC ("Snap-on Credit"), then this Add-On Rider is also assigned to Snap-on Credit and all references to Dealer are to Snap-on Credit as Dealer's Assignee.**

5. **Grant of Security Interest.** As security for your obligations under this Agreement, or any other agreement with Dealer or Dealer's assignee, you hereby grant Dealer a purchase money security interest in each item of Property you purchase under this Agreement until that item is paid for. As further security for your obligations under this Agreement, in all states except where prohibited by applicable law for agreements of this type, you hereby grant Dealer a security interest in each other item of tools, goods and equipment previously purchased or hereafter acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or bearing Snap-on Incorporated trademarks or logos, together with all proceeds (including insurance proceeds), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the Property are collectively referred to as "Collateral"). If this Agreement is assigned to Snap-on Credit pursuant to Section 6 below, and if the Amount Financed includes a transfer of RA balance owed to Dealer, then Dealer hereby assigns to Snap-on Credit any purchase money security interest that Dealer may have in any merchandise reflected in the RA balance so transferred. In such case, Snap-on Credit shall continue to hold a purchase money security interest in such merchandise after such transfer. You agree not to remove any Collateral from the state where the original sale was made without the written consent of Dealer or Snap-on Credit, if this Agreement is assigned to Snap-on Credit. You agree not to sell, dispose of or encumber any Collateral until your entire balance due is paid in full. To the extent permitted by and subject to applicable law, you agree and hereby grant to Dealer and Snap-on Credit or its agent or assigns the power of attorney and right to sign on your behalf and file or record such financing statements or other documents as may be necessary to perfect or maintain the security interest granted by you under this Agreement.

6. **Assignment by Dealer.** (a) Dealer may assign this Agreement for value to **Snap-on Credit LLC, 950 Technology Way, Suite 301, Libertyville, IL 60048.** If Dealer assigns this Agreement to Snap-on Credit, then after such assignment (1) Snap-on Credit or its assigns shall have all the rights and remedies of Dealer under this Agreement and all of your obligations, agreements, representations and warranties shall be deemed to have been made to Snap-on Credit with the same effect as if Snap-on Credit were an original party to this Agreement; and (2) Dealer will not have any power or authority to exercise any such rights or remedies, give any consents under Section 5 or change or modify this Agreement or any related document in any way. (b) If this Agreement is assigned to Snap-on Credit, you agree to deliver your payments to Dealer or directly to Snap-on Credit. *The Dealer is not Snap-on Credit's agent for any purpose.* If you make payments to your Dealer, the Dealer will be acting as your agent. In that capacity, the Dealer has agreed with Snap-on Credit to remit payments under this Agreement to Snap-on Credit on a regular basis. You will be credited with payment on the date Snap-on Credit receives payment from the Dealer. Payments received by Snap-on Credit after 10:00 a.m. CST will be credited on the next business day. Snap-on Credit will credit you and waive additional finance charges and late charges on any installment regardless of when payment is received from the dealer *if you have proof of your timely payment to the Dealer* (such as a valid receipt or canceled check). Alternatively, you may make any payments (by debit, check or money order payable to Snap-on Credit, and not cash) directly to Snap-on Credit at the address provided to you by Snap-on Credit, in which case you will be credited with payment on the date Snap-on Credit receives the payment. Snap-on Credit may require you to make payments directly to it. Snap-on Credit's business days are Monday through Friday, excluding holidays.

7. **Property Insurance.** So long as Dealer or its assigns has a security interest in any Collateral, you will obtain and keep in force fire and other casualty insurance on the Collateral in an amount and form and written by insurers satisfactory to Dealer, with loss payable to Dealer or Dealer's assignee. If you fail to do so, Dealer or its assigns may, at their option, purchase such insurance, in which event you must pay the cost thereof to Dealer or its assigns on demand. However, any failure by Dealer to obtain and keep in force such insurance, after your failure to do so, shall not release you from any obligations or liability under this Agreement or any other agreements. *Any insurance procured by Dealer under this section will not include insurance for property damage to others.*

8. **Additional Charges.** To the extent permitted by and subject to applicable law, you agree to pay the additional charges listed below. If a fee is not assessed, Dealer does not waive the right to insist on strict compliance with this Agreement by you at any time. *(a) Security Interest Charges.* You will be assessed a Security Interest Charge to cover (1) fees and charges paid to public officials for determining the existence of or for perfecting, releasing or satisfying the security interest you granted under this Agreement, (2) the costs payable for any outside service retained to provide searches and filings for perfecting and verifying the security interest and (3) in certain states (depending on state rate limits and rate calculations) we may also charge an amount to recoup a portion of our production and management costs related to maintaining security interest transactions, not to exceed $15.00. *(b) Late Charges.* If you fail to make payments under this Agreement within 10 days after the date due, you may be assessed a Late Charge of the lesser of: $10.00 or the maximum permitted by applicable law. *(c) NSF Check Charges.* If your check is not paid by your bank because of non-sufficient funds, a closed account, or any other reason, you may be assessed an NSF Check Charge of the lesser of $25.00 or the maximum permitted by law. *(d) Legal Fees.* In addition to the full amount owed and any court costs, if any matter arising out of your default under this Agreement is referred to an attorney to collect the amount you owe or to repossess any Collateral, you agree to pay all costs and expenses (including all actual and reasonable attorneys' fees and costs) incurred by us in enforcing any of the terms of this Agreement or any of our rights against you. *(e) Extension fees.* In the event we provide you a contract term modification or payment extension at your request or as part of another type of payment arrangement, we reserve the right to charge a one time extension fee of the lesser of $30.00 or the maximum amount allowed by law to offset a portion of our costs associated with such change. *(f) Other Considerations.* We reserve the right to charge additional fees as appropriate in the event the parties agree to other contract modifications.

9. **Events of Default.** The occurrence of any one of the following events constitutes a default under this Agreement: (a) You do not pay at least the minimum payments due or you otherwise become delinquent on any other obligation to Dealer or to Snap-on Credit or its assigns, or if this Agreement is assigned, to such assignee; (b) you file or consent to the filing of bankruptcy or similar proceedings against you or you become insolvent, or your financial condition deteriorates significantly and it appears likely that you will not be able to repay Dealer for any reason; (c) you die, become imprisoned or are declared legally incompetent; (d) you at any time give Dealer information that is inaccurate, misleading or incomplete; or (e) you fail to comply with any terms or conditions of this Agreement.

10. **Acceleration; Remedies.** Dealer, or if assigned, Dealer's assignee will have all the rights and remedies of a secured creditor under the Uniform Commercial Code and any other applicable laws. In addition, if any one of the events of default occurs, subject to any right you may have under applicable law to receive notice of and to cure such default, at Dealer's option Dealer may (a) declare the entire unpaid balance due under this Agreement immediately due and payable; and (b) repossess any Collateral in which Dealer still retains a security interest, and without limiting the foregoing, in the event this or any other transaction is assigned, any Collateral in which assignee still retains a security interest but only in the manner and to the extent permitted by applicable law. If Dealer resells any repossessed Collateral, Dealer agrees to pay you any surplus remaining (after deduction of the costs of repossession and sale and other costs, including reasonable attorneys' fees, to the extent permitted by law) and you agree to pay Dealer any deficiency in accordance with the Uniform Commercial Code. Dealer may accept late or partial payments or any payments marked as being payment in full or as being settlement for any dispute without prejudicing any of Dealer's rights under or in any way amending this Agreement. Dealer's failure or delay at any time to exercise any of Dealer's contract, legal or equitable rights shall not be deemed a waiver of these rights nor of the right to exercise Dealer's rights at any other time. If Snap-on Credit becomes the secured party under this Agreement, you agree that it is commercially reasonable for repossessed Collateral to be sold at public or private sales (in any state or county selected by Snap-on Credit) to dealers or others in lots or pieces (with or without the Collateral being physically present) at used tool prices. In the event you do not pay all amounts due under this contract and you are unreachable, or in the event of settlement or other events, IRS regulations may require Dealer to file a 1099-C form for informational purposes showing the remaining unpaid amounts due under your original contract regardless of any dispute. The mere filing of such 1099-C does not itself constitute a forgiveness or adjustment of any amounts due. The term "Buyer" and "Dealer" as used in this Agreement also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors and permitted assigns of those parties.

11. **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, THE ASSIGNEE'S STATE; PROVIDED, HOWEVER, IN THE EVENT THIS AGREEMENT OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED UNDER ILLINOIS LAW, THEN THE LAWS OF THE STATE OR OTHER LOCALITY WHERE YOU RESIDE SHALL GOVERN. YOU AND DEALER WAIVE ALL RIGHTS TO A TRIAL BY JURY. If used in U.S. Territories or Commonwealths, this Agreement is not be governed by the United Nations Convention on Contracts for the International Sale of Goods.

12. **Transfer of Agreement.** Dealer reserves the right to sell or transfer this Agreement in whole or in part to another entity or person without prior notice to you. You, however, cannot transfer this Agreement or rights and obligations under this Agreement to any other entity or person.

13. **Severability; Entire Agreement.** If any term, provision or section of this Agreement is held void, voidable, invalid or unenforceable under any statute or court decision, or any governmental rule or regulation, the remainder of the Agreement shall remain effective, and any such ineffectiveness shall not affect the validity or enforceability of this Agreement in any other jurisdiction. This Agreement, any previous Credit Sale Contract, Add-On Riders and, any written addenda or riders hereto signed by both parties constitutes the entire agreement between the parties regarding the subject matter of this Agreement.

**Notice to Maryland Residents.** Agreement is pursuant to Subtitle 10 (Credit Grantor Closed End Contract Provisions) of Md. Code Ann., Fin. Inst. §12-100 et seq.

**Notice to California Residents.** California Finance Lenders License No. 603-6880.

**Notice to District of Columbia Residents.** Seller certifies that the information contained in the contract complies with the District of Columbia Municipal Regulations, Title 16, Chapter 3.

**Notice to Connecticut Residents.** Attorneys' fees, which are permitted under Sections 8 and 10 of this Agreement, may not exceed 15% of the amount due plus court costs, and may only be collected or sought from Connecticut Residents when the contract is referred to an attorney, not a salaried employee of the holder of the contract, for collection. Late charges may not exceed the lesser of 5% of the past due installment (whether weekly or monthly) or $10.00.

**Notice to South Dakota Residents.** Any concerns regarding improprieties may be reported to the South Dakota Div. of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or call 605-773-3421.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

**BUYER ACKNOWLEDGES RECEIPT OF PRODUCT AND A COPY OF THIS AGREEMENT**

### NOTICE TO BUYER

DO NOT SIGN THIS CONTRACT (CREDIT SALE CONTRACT OR ADD-ON RIDER) BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT. YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS:

(a) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED FINANCE CHARGE;
(b) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT;
(c) TO REQUIRE, UNDER CERTAIN CONDITIONS, RESALE OF THE PROPERTY IF REPOSSESSED.

[Print/Submit]

| DEALER (SECURED PARTY) | BUYER (DEBTOR) |
|---|---|
| CIC Live Signature HOLMES VAN MATER 08:40:37 AM 09-05-2016 (-05:00 GMT) I, HOLMES VAN MATER, am signing to confirm the authenticity of the document. | CIC Live Signature KRISTOPHER OTT 08:40:49 AM 09-05-2013 I, KRISTOPHER OTT, am signing this document to confirm that it has been reviewed. |
| HOLMES VAN MATER | KRISTOPHER OTT |
| 289 E. HIGHLAND AVE. | 128 BROOKSIDE DR. |
| ATLANTIC HIGHLANDS, NJ 07716 | BELFORD, NJ 07718 |

Dealer assigns for value all right, title and interest in this Agreement to **Snap-on Credit LLC**, subject to acceptance by Snap-on Credit LLC. By providing the information on the unpaid balance due under any prior Agreement, Credit Sale Contract or any Add-On Rider(s) above for this transaction, Snap-on Credit LLC consents to the rescheduling of payments under the Credit Sale Contract and any Add-On Rider(s) previously assigned to Snap-on Credit LLC.

## APPENDIX A
### "Property Description"

INVOICE DATE  09/05/2013            INVOICE NUMBER  374864            DEBTOR NUMBER

Dealer                              Buyer (Debtor)
HOLMES VAN MATER                    KRISTOPHER OTT

Invoice Subtotal    $  3395.00      Total R/A Transfer $    0.00      Shipping/Handling $    0.00

Tax Applied         $   237.65      Invoice Total      $ 3395.00      S/H Tax           $    0.00

Total Including Tax $  3632.65

| Line | QTY | PRODUCT NO. SERIAL NO. | DESCRIPTION | EACH | COMMENTS | LC | LINE TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | 1 | EESC318PJJ | | 3895.00 | 0.00 | | 3895.00 |
| 2 | -1 | TRADE | | 200.00 | 0.00 | 3 | -200.00 |
| 3 | 1 | 13.4FREE | | 0.00 | 0.00 | | 0.00 |
| 4 | -1 | ECREBATE300 | EC INSTANT REBATE 30 | 300.00 | 0.00 | 8 | -300.00 |

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| CT Lien Solutions | 8003313282 |

B. E-MAIL CONTACT AT FILER (optional)
sosack@uccdirect.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071
US

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:51576172

03/09/16 22:52:40

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| OTT | KRISTOPHER | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 128 BROOKSIDE DR | BELFORD | NJ | 07718 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |
|---|
| SNAP ON CREDIT LLC |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 950 TECHNOLOGY WAY, SUITE 301 | LIBERTYVILLE | IL | 60048 | US |

4. COLLATERAL: This financing statement covers the following collateral:
Purchase Money Security Interest in automotive tools and equipment, more specifically, listed on Credit Sales Contract or Equipment Lease No. listed below. In addition to the purchase money security interest granted in the collateral listed on the referenced, the collateral shall include all items of tools and equipment of Debtor, whether now owned or hereafter acquired, which were acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or any of its affiliates, or bearing the Snap-on or Sun Electric trademarks or logos, together with all proceeds (including insurance proceeds or claims), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the collateral listed on the referenced Credit Sales Contract or Equipment Lease are collectively referred to as "Collateral"). Credit Sales Contract No..

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
NJ-0-52900013

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

8/2/2016

United States Bankruptcy Court Trenton NJ
402 East State Street, 1st Floor
Trenton, NJ 08608

Re: Kristopher Ott
Bankruptcy No.: 16-19227

To Whom It May Concern:

Enclosed please find the original Reaffirmation Agreement between the above referenced debtor and Snap-on Credit LLC.

Thank you for your prompt attention to this matter.

Sincerely,

/s/ Crystal Passias

Crystal Passias- Paralegal
Snap-on Credit LLC